Chair passes baton to Ms. Diana Ross Our last case is number 22 1 1 3 2 5 Roselle vs. VMSB LLC Ms. Murphy, you've reserved five minutes for rebuttal, is that correct? Indeed I have, Your Honor, thank you. You may proceed when you're ready. Good morning. Thank you, Your Honor. May it please the Court. I'd like to begin this morning, if the Court would like, with the jurisdictional issue that the Court requested that we address at argument. I think at the outset it makes sense to go through a brief timeline of the events here. I think it's significant. On September 17th of 2021, the parties settled Count 3 of this case. And in the settlement agreement, which is part of the record, it states, at this stage, the parties have agreed that regardless of the outcome as to Counts 1 and 2, it would be in all parties' interest to resolve Count 3 prior to trial. On September 27th, the parties filed a motion for approval of the settlement pursuant to the Eleventh Circuit's decision in Lynn's Foods and requested dismissal because if approved, there would no longer be a justiciable controversy as to that count. On March 28th, 2022, six months later, the Court granted summary judgment as to Counts 1 and 2, but did not direct entry of judgment on those counts pursuant to Rule 54. On March 29th, the following day, the Court granted the motion for approval and dismissal in its entirety. There was no reservation in that grant. It granted the motion, and it, for some reason that we don't know, also ordered the parties to file a stipulation of dismissal 30 days later. On April 22nd, we filed this appeal, and on April 29th, within the 30-day period, we filed the stipulation pursuant to the Court's directive. We reviewed the cases to which the Court has directed us, and none of them applies here because each of them dealt with a dismissal under Rule 41A, which can only be used to dismiss an action. We understand that. But here, our dismissal was not pursuant to Rule 41A, and so its limitations do not apply. Rather, we entered into that collective settlement of Count 3 while the other counts were still pending, and we asked the Court for approval pursuant to Lynn's Foods and dismissal because the count was substantively resolved. Unlike Estiva and Perry, we did not move or agree to stipulate to judgment on the other counts in order to game our way to appellate review. So what is the authority under which the stipulation was entered? If it's not 41A1, then what is it? The Court has an inherent authority, Your Honor, to dismiss claims before it. It dismisses them pursuant to other rules. And frankly, once Count 3 had been resolved and approved as fair and reasonable, that operated as a merits determination, certainly for race judicata purposes, on that claim. The Court no longer had Article 3 standing with respect to that claim because there's no longer a claim or controversy with respect to Count 3. The Court would have to dismiss, even if it never directed us to dismiss. There's nothing left for the Court to do there. There's no controversy any longer as to that claim between the parties. And I think that's an important distinction as well between the cases that the Court directed us to. Did you — I may have misunderstood what you said. Did you say the Court granted summary judgment on the other counts after the settlement agreement was approved? So it was after the settlement agreement was filed. It literally approved the settlement the following day. I'm not sure if there wasn't a reason the Court couldn't have done it on the same day at the same time. It was just really a timing issue. But we didn't move for approval while everything was still pending. We requested dismissal while everything was still pending, unlike Estiva and Perry, where the parties got the results of the counts that they wanted to appeal and then said, oh, let's just get rid of these other counts so that we can get up to the appellate court as fast as possible. Here, we wanted to resolve count three regardless. And once we did that, the Court no longer had jurisdiction over that claim because there's no controversy between the parties at that point. I have a related timeline question. As I understand it, the parties submitted your court-ordered stipulation dismissing count three. The notice of appeal was filed immediately after the summary judgment order on counts one and two and the district court's paperless settlement order of count three. But that order requested that the parties file a self-executing joint stipulation that would dismiss the case within 30 days. But as I understand the record, that was filed on day 31. Am I missing something there? We filed it on April 29th, Your Honor. I don't have the calendar in front of me to know if the calendar says it's 31 days. I won't dispute that. But as we understood it, when the Court granted our motion requesting approval and dismissal, it granted that motion in its entirety. So to us, it seems redundant that the Court also asked us to file a stipulation of dismissal because when it granted the relief in its entirety that we requested in our motion, the case was dismissed at that point. Thank you. So this Court has appellate jurisdiction over all claims in which there is nothing left for the trial court to do but execute the judgment, and that is exactly what we have here. Summary judgment was entered as to counts one and two. There is no justiciable controversy as to count three. And although the Court has not yet directed entry of judgment pursuant to Rule 54 on those claims, that is the only thing that remains to do. And so under 28 U.S.C. 1291, as well as the Cunningham v. Hamilton County case, which is 527 U.S. 198, 1999 Supreme Court case, this Court has appellate jurisdiction over this case. I'll move to the substantive arguments if there are no further jurisdictional questions. This case presents an issue of first impression in this circuit. Can a party swear under penalty of perjury on its tax returns and affirmatively represent a fact, garner the benefit of that fact, and then turn around and do a 180 in a subsequent proceeding and later take an identical oath to the exact opposite? Is that, is it fair to say that's an issue of first impression? I think it's pretty squarely dealt with in the Campari case, which said it didn't matter. Now, I certainly understand why that's entirely dissatisfying to you and your clients, and I suspect that a lot of restaurants may have an issue with the IRS, but that's obviously not what we're here to talk about. How did the Campari case not resolve that issue? Thank you, Your Honor. It didn't resolve the issue because the Campari case dealt with whether or not a restaurant reported money in its gross receipts, in its taxes. And the idea in that case is the restaurant didn't report the money in its gross receipts, and therefore it doesn't fall within the ambit of these FLSA regulations. That was the argument there. Here we're not talking about a failure to report something on taxes. This is not an IRS issue where the IRS needs to come in and do something and right a wrong that the employer failed to report something on their taxes. What we're saying here is you reported it correctly on your taxes. You reported it correctly as tips. You made an affirmative statement under oath that this money is tips, and you have to be held to that. In that case, we, frustratingly, did not have in the record how they had actually treated it on their taxes. And the decision was that it didn't matter, because even if they had sworn the other way, it wouldn't change the decision. I don't think that that, at least as I read Campari, Your Honor, that that was not how I read the holding, because the assumption and what the plaintiffs were arguing was that the money was not reported in the taxes at all. That was the question. It was, isn't this an IRS issue because you're saying they failed to report something? We're not saying there's a failure to report here. We have actual evidence of an affirmative representation that was made that it's an actual statement, an affirmative statement under oath, and that was not an issue in Campari. They never addressed that because it just wasn't an issue that was ever raised. The establishment was never raised in Campari. Are the definitions of standards for what constitutes a tip the same under the FMLA as under the IRS code? So the issue, Your Honor, isn't so much the definition. The definitions are very similar, but the issue is not so much the definition for our purposes as whether the employer is characterizing this as the employee's money or their money. And here they've made an affirmative representation by characterizing it as tips, that it's not their money, it's the employee's money, and that is the affirmative statement that we're holding them to. Once you characterize it as tips, you're saying it's not mine, it's theirs. And they not only characterized it that way in their tax returns, they also characterized it that way for purposes of the employee's wage statements and the employee's W-2s. So the employees are not a stranger to this transaction. The employees actually are part of the transaction and are suffering the consequences of that tax treatment. Again, that's different from Campari, where there was no evidence that the money was actually ever characterized as tips. Again, that's an affirmative characterization that was just not at issue in that case. Did the employees suffer any disadvantage as a result of the characterization on the tax returns of the money? Well, Your Honor, the employees aren't required to show that they suffered a disadvantage if they, under the standard for estoppel, if they show that the employer gained an advantage, which it did to the tune of hundreds of thousands of dollars in this case. But when money is reported as tips as opposed to wages, employers don't do withholding. They're not counted the same for purposes of Social Security and Medicare. I'm not a tax expert, so I don't want to get outside of my field. All right. Let me ask you this. Is there evidence in the record about the, showing the advantage that the employer obtained from the characterization on the tax return? Yes, there is, Your Honor. They got, they actually applied for a credit because of the, because of characterizing the money as tips, and they received that credit. Where is that in the record? I, again, similar to the last case, tied to the laptop. If you need the site, if we could have time after to give it to you. Thank you. Thank you. You were answering our questions, so you will have your full time for rebuttal. Thank you, Your Honor. Thank you. Good morning, Your Honors. Pleased to be able to address you on behalf of Apple EVMSV and to spend a few minutes talking about why we believe the summary judgment should be affirmed. And not surprisingly, I want to spend some time talking about Compari. Compari is a path that lines up remarkably well with, with what we believe should happen in this instance. And if you really consider the magistrate judge's report and recommendation, it actually anticipated the crux of this court's ruling in Compari, starting with a focus on the, the definitional and example regulations in the CFR 531.52 regarding a tip, which to be a tip, it requires that not only the amount to be given, but whether to give at all is determined solely, in the words solely is in the regulational definition, solely by the customer. Also 531.55 regarding service charges that provides examples of items collected that would be service charges, including a compulsory charge imposed by a restaurant, and then also a charge that becomes part of the restaurant's gross receipts. The district court here correctly determined that the amounts at issue were a tip because of the answer to what was described as the key twofold question, who determines the fee and the amount that should be provided? If the answer to that is not solely the customer, then under the law in this circuit, it's a that's what was found here below, and that's the same result that should obtain as a result of this appeal. Importantly, the fact that the charge is not enforced with monolithic invariability just doesn't matter. Here VMSB, the restaurant, had the discretion to not apply a service charge or to take other  The same was true in Campari. The record evidence here is that that rarely occurred. In fact, in the magistrate judge's report and recommendation, he referred to the fact that the plaintiffs were overstating the extent of the customer's discretion. When you look at what's in the record, you see that for the years 2018 and 2019, the total transactions, and even that overstates the incidence of removal because the record also contains the declaration of Daniel Tamir, the director of accounting for the Appalee, who explained that in many instances where there was event, a service charge associated with an event charge, it was removed as well. This is a restaurant in the former Versace Mansion in South Beach, so there are a lot of parties, weddings, et cetera, where there was a charge for the event itself, not the food and beverage, and that would be a situation where the service charge would be removed as well. So that rarely happened, and the incidence with which it happened certainly does not dictate a different result than this court found in Campari, where there is some discretion on the restaurant to remove it. But that doesn't mean the customer solely determines whether and what amount to tip and who the recipient of the funds are. It lines up on all fours with Campari. That's the tip side. Turning to the service charge side, the district court here reasoned that the examples in 531.55 were disjunctive. There are two examples. Either is sufficient, neither is necessary. One of those examples is in Sub A, which again is the compulsory charge imposed by the restaurant. That is essentially the same analysis as you get in deciding whether or not something is a tip. Who's got, is it a charge as to which the customer has sole discretion? If not, it's not a tip. Sub B really received more of the attention in the analysis, and that's where we talk about gross receipts and whether or not monies collected become part of the gross receipts. First of all there, it's important to recall that this is just an example. It's not a requirement that for something to be a service charge, it has to become part of the gross receipts. That was determined by the district court here, and later Campari, of course, established that same point. But second of all, that example can be satisfied, that condition can exist where a restaurant collects service charges through a point of service system, a POS, and then later redistributes those amounts collected, or a portion of them, to the employees. That's what happened here, and so you had the magistrate judge in his report and recommendation saying that even if there was a requirement, this gross receipts was more than just an example and is a requirement, that in this case, on this record, that happened here. So after that decision in June of 2021, of course, this court decides Campari in March of 2022, and it really is remarkable the similarities. In Campari, there's an automatic imposition of a service charge. The restaurant has discretion to remove it in certain instances, but payment of the amount and whether to pay it all were not solely determined by the customer. The Campari court described that as the relevant question, the critical feature in determining whether something is a TIP. And because customers could not on their own determine that, it was a service charge, not a TIP. Similarly, on the gross receipts issue, the Campari court analyzed that issue essentially the same way as happened in the district court here. It's a disjunctive, 531.55 is two examples. It's not a requirement, but it is sufficient if either of those is satisfied for something to be a service charge. I want to make sure I understand your argument about how this happened here. That is gross receipts. You're saying we didn't have to report more gross receipts to the IRS because we took the service charge, mandatory, and then we actually, even though it's not a TIP, we gave the employees the benefit of it. We gave them some money out of it. Is that what you're saying? Not exactly, Your Honor. I think as far as the IRS side of it, we would rely on Campari's very clear holding that tax forms are irrelevant. And so . . . I'm not talking about that. I'm talking about a record question where you said we shouldn't worry about the gross receipts aspect because in this case, that happened here. The employer can take a mandatory service charge and distribute among the employees. Are you saying that's what happened here? It did, Your Honor. And the way that happened . . . Where's the proof? Just tell me in the record. Somebody who testified, we take out a lot of the service charge. I'm just . . . I understand that to be the case, but I'm just asking for a record, an affidavit or deposition to estimate we can look at. Understood, Your Honor. So that would be explained in the declaration of Daniel Tamir and the docket number I have on that is 117-1. And again, he was the . . . and then there was a supplemental declaration, which was at 128-2. He was the Director of Accounting for the Applee. And basically, what happens is when the service charge and when the customers would get the checks, there would be the service charge and then there would be a place also for a gratuity to be added by the customer. The service charge would, through the POS, the software that the restaurant uses to track all of these different amounts, that would come into the gross receipts in terms of the restaurant's financial records. And then they used a point system to distribute those amounts to waiters, bartenders, and other front of house personnel. And so that is . . . A high percentage. There's an amount that is . . . Like 15 of the 20 or what? So 90% of the service charge, which I apologize for my math, but I think that's 18% of the gross number. But it's 90% of the service charge. 10% was retained by the house basically to cover the administrative side of, you know, credit card charges, things of that nature. All right. You've answered my question. I wanted to ask you about the IRS issue though. Are you taking the position that the way the monies were reflected in the tax returns was not inconsistent or that it's irrelevant under ComPary? It's primarily that it's irrelevant, but it's also the record doesn't make it squarely inconsistent either because the record contains sales tax returns where the service charge was reported as gross receipts and sales tax was paid on the service charge by the restaurant. There's no indication in the record that the employees suffered any kind of disadvantage at all as a result either of the restaurant's tax returns or as a result of the classification on their W-2s. They said you got a credit of some sort. Well, again, and that is the tax returns, the income tax returns of the restaurant itself. So, the employees may not have suffered a consequence, but the business received a positive consequence if you improperly characterized them, right? I think there's a fair inference that there's a benefit to the business from the tax characterization as far as the income taxes return. But I think there it's important to remember that we are operating under judicial concepts that we need to follow their elements. And so, you know, whether this is judicial estoppel or quasi-estoppel is important. And if you think first of judicial estoppel, it's got to involve a proceeding. The filing of a tax return, the authorities we've cited for that, that's not a proceeding. That's not a legal proceeding. That's a filing of a tax return. Judicial estoppel also requires that there's an intent to make a mockery of the judicial system. There's nothing in the record that would support that conclusion either. And again, I would reference the sales tax returns here where gross receipts, excuse me, where service charges were reported as gross receipts. And I think part of the challenge that we face in addressing these issues is that this was not something that was raised timely. It was first specifically raised in the objection to the magistrate's report and recommendations. So we're all a little, I think it's fair to say, hamstrung in trying to piece together record elements to address these concepts. But I think that notwithstanding, the Court can look at the law and conclude that neither judicial estoppel would apply here, nor would quasi-estoppel apply under the principles of those two doctrines. And fundamentally, we have a situation, to just get back to square one, where Campari said it doesn't matter what's in the tax returns. What we're looking at here is how these receipts were. The tax returns there. So we don't know what the tax returns said, right? That's a fair point, Your Honor. Okay. But let me ask you this. Why couldn't the restaurant here have gone in and said, okay, here are gross receipts, include the service charge. And since they pay 90 percent of it out as tips, or they could characterize as tips, they could, we pay our employees X amount an hour wages, and then we give them the benefit of this service charge as an extra tip. And so our net income is this. I mean, it wouldn't have been that much a difference in net income if you only kept 10 percent of it, right? So I don't understand why you wouldn't, it seems to me, under the tax laws, you had to report this as receipts. If you want to take the position here, why would you not have needed to report it as gross receipts? Because you can take business expenses, and if you redistribute the service charge, call it what you want to, bonus, tips, whatever, you can deduct that, and your net income is not going to be that different. No, I understand. Why didn't the accountant do that? That seems the proper way. And then you wouldn't have had this problem. That's a very good point, Your Honor. I think the answer I would give is that that evidence is not in the record, but there is no, nothing in the record that No, we have in the record that you, what we, and let me make sure I know this, what we have in the record is you didn't include it in gross receipts, and you said, I don't have to include it in gross receipts because it was tips. That's, is that right? Is that right? Not the last part. I don't have to include it in gross receipts because it was tips. Try it this way. You didn't include it in receipts, correct? That's correct. In the You identified it as a tip. In those income tax returns, correct, Your Honor? In sworn income tax returns. Correct. But what I would, what I would again submit to the Court is Campari says that's irrelevant and the principles of estoppel don't provide that that serves as a basis to avoid what the very clear law of Campari dictates should happen here. And so I will use a little bit of the brief time remaining just to talk about the jurisdictional issue. I think obviously we did not contest jurisdiction during the briefing stage. We believe, we agree with the timeline that was set forth by appellant's counsel, but I do think that the Court has raised a valid concern that is not answered by the procedural history here and don't see a way that a dismissal can occur outside of Rule 41. So, you know, obviously in terms of the practicalities of everything we're hearing, and we're certainly willing to go forward, but we do believe that in terms of the issue it doesn't exist. And so that would be the appellee's position on that point. Thank you, Your Honors. Thank you. I want to start by saying in Campari, as I understood it in Judge Grant, I know you were on that panel, I did listen to the argument. And as I understood it, the issue was the plaintiff was saying that the tax returns would have shown that it wasn't reported in gross receipts. And in response to that, the Court said, well, the gross receipts, it wouldn't have mattered, so it doesn't matter that you didn't get that discovery because it wouldn't have mattered. That is not the situation we have here. Here, VMSB would have this Court replace the sanctity of a sworn oath with a fiction that only certain oaths count. And this Court said in Slater v. U.S. Steele that estoppel is intended to prevent perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment. And that's exactly what happened here. VMSB reported this money as tips in its taxes, and it's now flipping the switch, having its cake and eating it too, in a very heads-I-win, tails-you-lose situation of saying, now I'm going to call it my money. I'm going to call it my gross receipts now when it's convenient for me under the FLSA. And Slater says that they can't do that. Now, Slater did involve judicial estoppel because there was a prior tax proceeding. But interestingly, what Slater said was a discrimination plaintiff could not bring their discrimination claim where they didn't disclose that claim in bankruptcy. Now, the defendant in that case was not party to the bankruptcy proceeding, so was a stranger to that proceeding. But the Court said, you can't bring this claim now. Not that you don't have a claim. You might have a claim as a matter of law. You can state a claim as a matter of law, but we won't let you because you made this prior representation under oath. Similarly, the Fourth and Fifth Circuit cases that we cited, Inree Davidson and the Dobbs case, were cases of tax estoppel where a party made a representation in a tax return, not in an adversarial proceeding. And was later stopped from taking a contrary position to how they characterize something, their alimony, in their tax returns. Now, the courts didn't look at, well, is it alimony as a matter of law before I estop you? No. You made a representation, and I, as a court, am entitled to rely on it. If I can't, the judicial process falls apart. But in that case, in those cases, the other party did have a detrimental reliance. They were disadvantaged by the agreement respecting alimony, right? That is true, Your Honor. But when you look at the elements of estoppel, that is not required. All that is required is that one party suffer an advantage or the other party suffer a detriment. It's not required that there be both. And here, I'm just not enough of a tax expert to say whether the plaintiffs officially suffered a damage. I'm just trying to get clarity on what the estoppel doctrine you're relying on is, because in your brief, you referred to judicial estoppel, quasi-estoppel, tax estoppel. I'm a little confused. I understand, Your Honor, and I'm happy to clarify. Here, we're talking about quasi-estoppel in a way that is also referred to as tax estoppel by some courts. And many courts, the Eighth Circuit, the Fourth and Fifth Circuits, have all recognized that quasi-estoppel principles can apply to representations in tax returns. And so we're asking that this Court do the same, because here, we do have an affirmative representation that the benefit, that the VMSB derived a great benefit from. I have one follow-up question on the estoppel question. Do, your gray brief says that you do not rely on equitable estoppel, but you do rely on quasi-estoppel. Can you tell me how, what's the distinction between those two things? Equitable estoppel, Your Honor, I think just has different standards that apply. Quasi-estoppel is more closely related to judicial estoppel, and all of the cases that deal with tax estoppel have dealt with it under quasi-estoppel principles. So you don't think that quasi-estoppel is one form of equitable estoppel? You think they're just totally separate things? I think that that's how the case law seems to have addressed them. I don't think it really matters what you call it, necessarily. I think the elements are there. And I want to talk about the element of mockery of the judicial system, because that is, there are specific elements that are laid out for meeting that. And the defendant meets them here. One more. I'm sorry, but I want to make sure I also return to your argument about Campari. So there, the argument was, as you correctly stated the argument, right, we think that in their tax returns, they didn't qualify this properly. And the Court said it doesn't matter, because even if they had, this would still be the answer. I don't, I'm not sure how, I'm not sure how that doesn't mean that even if they had made this same sworn statement that obviously we do have here, that that wouldn't have mattered, right? I'm not sure how having that sworn statement makes it matter, whereas it wouldn't have mattered if we'd had that before. Well, the issue is that Estoppel didn't even come up in that case, Your Honor, because there was no statement to look at. And all the plaintiff alleged is that it wouldn't have been reported in the gross receipts. Right. But I think the opinion said even if that, even if that sworn statement had been made, it wouldn't have affected the outcome. Well, I don't, based on my reading of the opinion, I definitely don't want to tell you your own opinion, but. I know you're in a tough position here, but. No, it's fine. It's that even if, what Kampare seemed to say is that even if it hadn't been reported in gross receipts there, that's okay because taking it into the point of sale system counts as it becoming gross receipts, so you don't have to do a double reporting on the taxes. That's not what we're saying here. Here we do have the benefit of the tax returns, and we have an affirmative representation that it's tips. That is not the allegation in Kampare, and that's not the issue that Kampare decided. I think it's a really important distinction because if you don't stop somebody from taking a contrary position to what they swore in their tax returns when it's now convenient, then the whole system falls apart. Is the difference in Kampare, the reason it didn't matter is because the court rejected the gross receipts requirement as being just an example in the regulation, or do I have that wrong? I think in Kampare, the court discussed whether gross receipts requires reporting in the tax return or just requires the company taking the money into its point of sale system. Loss of money goes into the point of sale system that can never be part of the employer's gross receipts, like tips, like money in a tip pool. The FLSA's amendments in 2018 made it clear that the employer's never allowed to use that money for any reason, so that money physically cannot be part of the employer's gross receipts, but that money still goes into the point of sale system. So we would say that the regulation's requirement that it become part of gross receipts, as opposed to just saying money collected or something like that, would say that just because it goes into the point of sale system doesn't necessarily make it gross receipts, but that's not the issue that we have to resolve here because here there's an affirmative representation that it is tips. I know I'm super over time. If I could just have one minute to just address one point that I didn't get to at all, I'd really appreciate it. Very quickly. Very quickly. The estoppel argument, just because VMSB's counsel addressed the issue of whether or not it's a tip under the FLSA, there are factual issues that are, this case is factually distinct from COMPARE as well. We've pointed out those factual distinctions in our briefing. But here, 100 percent of the time that customers sought removal or reduction of that service charge, it was removed or reduced. The testimony in COMPARE was that the, and everyone agreed, that the restaurant retained discretion as to whether or not to charge it. Here, our point is a little different. The restaurant essentially had a policy that said, if a customer doesn't want to pay it, they don't have to pay it, and that is no different from a suggested gratuity under the FLSA. I think we got your argument on that. Thank you so much. I appreciate it, Your Honor. Thank you so much for the Court's time and for granting this argument. Court is adjourned.